IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN A. FRENCH, JR.,

                Plaintiff,                       OPINION AND ORDER

   v.

                                                    19-cv-503-wmc

JAMIE BARKER, HSU SUPERVISOR,
JOAN HANNULA, MD,
JUDITH BENTLEY, NP,
RN NICHOLE TREVINO, and
RN NANCY KURKOWSKI,

                Defendants.

*Pro se* plaintiff John French, a prisoner currently incarcerated at Jackson Correctional Institution (Jackson), is proceeding in this civil action on claims challenging the medical care he received between April 2017 and February 2019, when he was incarcerated at Stanley Correctional Institution (Stanley).  I granted French leave to proceed against defendants Jamie Barker, Dr. Joan Hannula, Judith Bentley, Nicole Trevino, and Nancy Kurkowski on Eighth Amendment deliberate indifference and Wisconsin negligence claims, for their involvement in failing to prevent, and then to treat, French's various cardiac-related conditions.  Defendants Jamie Barker, Dr. Joan Hannula, Judith Bentley, and Nicole Trevino, represented together by the Wisconsin Department of Justice and hereinafter "the State Defendants," have filed a motion for summary judgment on the ground that French failed to exhaust his administrative remedies with respect to his Eighth Amendment claims.  (Dkt. 45.)  Defendant Nancy Kurkowski filed a motion for summary judgment on the same ground.  (Dkt. 41.)  Also, French has filed a motion for assistance in recruiting counsel.  (Dkt. 19.)

For the reasons that follow, I am granting Kurkowski's motion, granting in part and denying in part the State Defendants' motion, and I am dismissing without prejudice all of French's claims in this lawsuit with the exception of his Eighth Amendment deliberate indifference and negligence claims against Dr. Hannula and Nurse Trevino related to the medical care these defendants provided on July 13, 2018. With respect to those remaining claims, genuine disputes of material fact preclude entry of summary judgment in defendants' favor. To resolve those disputes related to the exhaustion defense, I am setting this matter for an evidentiary hearing under *Pavey v. Conley*, 528 F.3d 494, 496-98 (7th Cir. 2008), to be held via videoconference.

Finally, I am denying French's motion for assistance in recruiting counsel without prejudice.

OPINION

## I.   Exhaustion

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must also "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [institution's] administrative rules require," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), including (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Furthermore, inmates are required to exhaust only those administrative remedies that are available to him, and administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In Wisconsin, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner ("ICE") within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07.[1] The inmate complaint must "clearly identify the issue" that the inmate seeks to raise. *Id.* § 310.07(5).

Once the offender complaint reaches the appropriate reviewing authority, a decision is rendered. If the decision is unfavorable to the inmate, the inmate may appeal to the corrections complaint examiner (CCE). *Id.* § 310.12(1). Appeals to the CCE must be

---

[1] In April of 2018, a new version of Wis. Admin. Code § DOC ch. 310 went into effect, and the following citations are to that current version of the code.

3

made within fourteen days, unless good cause is shown for untimely filing.  *Id.* § 310.12

(6).  The CCE then makes a recommendation to the Secretary of the Department of

Corrections, who will take final action on the complaint.  *Id.* § 310.13.

French is proceeding against defendants based on the following allegations:

- On April 20, 2017, defendant Nurse Bentley failed to provide French any medications upon his transfer to Stanley.

- On June 1, 2018, July 13, 2017, and February 20, 2019, Dr. Hannula mishandled French's health conditions by failing to provide medication or providing inadequate medication.

- On June 18, 2018, defendant Nurse Kurkowski ignored French's complaint that he was having difficulty breathing and had vomited blood, and on February 20, 2019, Kurkowski was involved in failing to respond appropriately to French's symptoms.

- On July 13, 2018, defendant Nurses Trevino took French's vital signs, performed an EKG, and sent French to his cell with anti-diarrheal medication, ignoring potential problems.

- On June 20, 2018, defendant Barker failed to respond to a letter that he was experiencing abdominal pain and vomiting blood.

(5/6/2020 Order, dkt. 18.)

The State Defendants and Kurkowski argue that French failed to file an inmate

complaint with respect to any of those claims.  They acknowledge that the ICRS system shows

that French filed two inmate complaints while he was incarcerated at Stanley, but they point

out that neither inmate complaint raised the medical care issues outlined above.  Rather, in

one inmate complaint, SCI-2018-13634, received June 25, 2018, French complained about

missing property, and in the other, SCI-2019-3543, received February 14, 2019, French

complained that he had been ordered to get out of his wheelchair.

In opposition, French does not suggest that he exhausted his claims related to the events from April 20, 2017, June 1, 2018, June 18, 2020, June 20, 2018, or February 20, 2019. Therefore, I am dismissing those Eighth Amendment claims without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*[A]ll* dismissals under § 1997e(a) should be without prejudice."). Further, I will relinquish jurisdiction over French's related negligence claims against Kurkowski, Bentley, Barker, and Dr. Hannula related to the same events. 28 U.S.C. § 1367(c)(3); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) ("The general rule, when the federal claims fall out before trial, is that the [district court] should relinquish jurisdiction over any supplemental (what used to be called "pendent") state law claims in order to minimize federal judicial intrusion into matters of purely state law.") (quotation marks and citation omitted). Accordingly, Barker, Bentley, and Kurkowski will be dismissed from this lawsuit.

That leaves French's claims against Nurse Trevino and Dr. Hannula arising from the events that took place July 13, 2018. French claims that he *did* attempt to pursue an inmate complaint related those events, but he never received a response, raising a question as to whether the ICRS system was available to him. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014) ("[A]ssuming a grievance was filed, [the prisoner] never received a response from the warden, and so didn't have to do anything further to keep his grievance alive.") French in particular represents in his opposition brief that on July 23, 2018, he submitted an inmate complaint to the ICE department at Stanley, alleging that on July 13, 2018, he reported chest pain to a correctional officer, that Nurse Trevino took his vitals and performed an EKG, and Dr. Hannula provided him with an anti-diarrhea medication. (French Br. (dkt. 54) 1; Ex. 28 (dkt. 54-1).) French also claims that

on August 27, 2018, he sent a follow up letter to Warden Richardson, repeating his allegations related to the events of July 13, 2018, and adding:

> I previously sent in a[n] inmate complaint for denial of treatment from Nurse Trevino and Dr. Hannula[.]  I have not received anything back from ICE or Jamie Barker.  I am trying to follow the chain of command and seems like all my efforts is not working.  Can you look into this matter.
>
> (Ex. 29 (dkt. 54-1).)

French further represents that "an appeal was sent to the Corrections Complaint Examiner" about the July 13, 2018, delay and denial of medical treatment.  (French Br. (dkt. 54) 2; Ex. 29 (dkt. 54-2).)  French claims that he filed the paperwork correctly and did not have control over what happened to it it if it was misplaced.

Before addressing the merit of French's opposition, I note that French has not submitted admissible evidence in opposition to defendants' motion, in the form of an affidavit or declaration, signed under penalty of perjury, detailing the steps he took to submit this alleged inmate complaint described in his brief, and authenticating the inmate complaint and appeal he attaches to his opposition brief.  Instead, French appears to rely solely on in his opposition brief, which he has not signed under penalty of perjury.  (*See* dkt. 54.)  However, the State Defendants do not ask that I ignore French's unverified assertions, and since it is reasonable to infer that French would confirm these statements under oath at a hearing, and would authenticate his inmate complaint and letter to the warden, I will consider his statements and exhibits.  *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) ("To be considered on summary judgment, evidence must be admissible at trial, though 'the form produced at

summary judgment need not be admissible.'") (quoting *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010)).[2]

Even accepting that French would testify as much about his efforts to file an inmate complaint about the events that took place July 13, 2018, the State Defendants urge the court to reject French's representations about that alleged inmate complaint because there is no record of it within the ICRS system. (The State Defendants have submitted additional evidence showing that the ICRS procedures were available to French on July 23, 2018 but he did not follow them.) The State Defendants first outline the system the institution uses to track inmate complaints: the inmate may submit an inmate complaint by placing it in a receptable designated for complaints or submitting it to the ICE office through institution or USPS mail; the ICE collects and date stamps the inmate complaint; the ICE either accepts the inmate complaint, returns it, or rejects it; and the ICE gives written notice to the inmate within 10 days of collection that the complaint has been received. (Hickey-Wilbur Decl. (dkt. 60) ¶¶ 6-7.) Regardless of how the ICE processes the inmate complaint, the inmate receives notice from the ICE that the inmate complaint has been received. (*Id.* ¶ 8.)

The State Defendants also represent that as of July 2018, the systems in place for collecting inmate complaints were functioning. French was assigned to Unit 4B, a general population unit. Each housing unit at Stanley has a locked mailbox in which inmates may deposit inmate complaints. To submit an inmate complaint, French would place the inmate complaint in the locked box any time between 6:00 a.m. and 10:00 p.m. ICE Hickey-Wilbur was working as Stanley during that time and represents that she would have picked up mail

---

[2] Of course, if French is unwilling to testify to these statements under penalty of perjury, then he should immediately notify the court, and I will reconsider defendants' motion, likely granting it and dismissing this lawsuit completely for French's failure to exhaust his administrative remedies.

directed to the ICE office every Monday through Friday at the start of her shift (7:00 p.m.), and that she did this in July 2018.  (Hickey-Wilbur Decl. (dkt. 60) ¶ 20.)  ICE represents that she would not refuse to acknowledge an inmate complaint or refuse to issue a receipt for it. She further represents that if ICE had received it, it would have been date stamped and entered in the system.  (*Id.* ¶ 22.)  Hickey-Wilbur represents that on July 23, 2018, ICE received seven inmate complaints, indicating that the ICE office and institution staff were in working order. However, none of the inmate complaints were from French.

The State Defendants further represent that there is no record of French sending the August 27, 2018, letter to Richardson.  According to Lori Patrouille, the warden's secretary, correspondence received in the warden's office is date-stamped and logged.  (Patrouille Decl. (dkt. 59) ¶ 5.)  Then the warden either assigns a staff member to follow up or the warden would respond to the correspondence directly.  Patrouille represents that she performed a search of the warden's correspondence log and found nothing to or from French about health-related matters, and she confirms that there is no record of a letter from French dated August 27, 2018.

The State Defendants lay out multiple compelling reasons to credit their position that French failed to exhaust his administrative remedies with respect to this claim.  Yet accepting their position would require me to discredit French's representation that he did, in fact, submit an inmate complaint to the ICE office, and that he attempted to follow up with Warden Richardson, to no avail.  Moreover, I find French's representations about his efforts to file an inmate complaint and follow the ICRS procedures are sufficiently detailed and specific to create a genuine dispute of fact as to whether French properly attempted to access the ICRS but did not receive a response.

8

Accordingly, to resolve defendants' affirmative defense of exhausstion, I must conduct an evidentiary hearing to resolve the dispute, under *Pavey v. Conley*, 528 F.3d 494, 496-98 (7th Cir. 2008); *see Roberts*, 745 F.3d at 234 ("Roberts may have been lying about having filed a grievance – but alternatively the defendants may have been lying when they denied there was any record of such a grievance.  A swearing contest requires an evidentiary hearing to resolve, and none was held.").  I will set this matter for a hearing, to be conducted via videoconference.

## II.    French's motion for assistance in recruiting counsel (dkt. #19)

French asks that the court recruit counsel for him because he cannot afford counsel, the issues in this case are complex, his incarceration limits his ability to conduct research and investigate his claims, and his claims are complex.  As an initial matter, civil litigants have no constitutional or statutory right to the appointment of counsel.  *E.g.*, *Ray v. Wexford Health Sources, Inc.,* 706 F.3d 864, 866 (7th Cir. 2013); *Luttrell v. Nickel,* 129 F.3d 933, 936 (7th Cir. 1997).  The court may, however, use its discretion to determine whether to help recruit counsel to assist an eligible plaintiff who proceeds under the federal in forma pauperis statute.  *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent an indigent civil litigant *pro bono* publico.")  French is proceeding in forma pauperis, so he's eligible for recruitment of counsel.

Before deciding whether to recruit counsel, a court must find that the plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful.  *Jackson v. County of McLean,* 953 F.2d 1070, 1072-73 (7th Cir. 1992).  French has submitted letters from more than three attorneys declining to represent him, so he has fulfilled this requirement.  Nonetheless, I am not persuaded that recruitment of counsel is appropriate in French's

circumstances.

The central question is "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007).  The only matter before the court right now is holding a hearing related to the steps French took to attempt to pursue an inmate complaint related to the treatment he received on July 13, 2018, by Dr. Hannula and Nurse Trevino.  French's opposition submissions suggest that he remembers those details and has the ability to testify about them.  His submissions similarly indicate that he is well-aware of the legal standards related to his Eighth Amendment deliberate indifference and Wisconsin negligence claims.  As such, even if defendants do not prevail on their exhaustion affirmative defense, I would not be inclined to recruit counsel for purposes of summary judgment.  If this case proceeds to trial, then French may renew his request.  The denial of his request for assistance in recruiting counsel will be without prejudice.

ORDER

IT IS ORDERED that:

1. The State Defendants' motion for summary judgment (dkt. 45) is GRANTED in part and DENIED in part.  It is GRANTED with respect to plaintiff John French's Eighth Amendment claims against defendants Bentley and Barker, and French's Eighth Amendment claims against Dr. Hannula, for her treatment of French on June 1, 2018, and February 20, 2019.  It is DENIED with respect to French's Eighth Amendment claims against Dr. Hannula and Trevino for their treatment of French on July 13, 2018.

2. Defendant Nancy Kurkowski's motion for summary judgment (dkt. 41) is GRANTED.

3. Plaintiff's Eighth Amendment and Wisconsin negligence claims against defendants Bentley and Barker, and against Dr. Hannula for her treatment of French on June

1, 2018, and February 20, 2019, are DISMISSED without prejudice.

4. Defendants Bentley, Barker, and Kurkowski are DISMISSED from this lawsuit. At the close of this case, the clerk of court is directed to enter judgment accordingly.

5. In accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Clerk of Court is directed to schedule a Zoom evidentiary hearing to determine whether plaintiff exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a), with respect to his claims against defendants Trevino and Dr. Hannula, arising from their interactions on July 13, 2018.

6. Plaintiff's motion for assistance in recruiting counsel (dkt. 19) is DENIED without prejudice.

Entered this 9th day of February, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge