IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

JOHN A. FRENCH, JR.,

                        Plaintiff,                         OPINION AND ORDER

    v.

                                                                 19-cv-503-wmc

JOAN HANNULA, MD, and
RN NICHOLE TREVINO,

                        Defendants.
_____

      *Pro se* plaintiff John French, a state prisoner currently incarcerated at Jackson Correctional Institution (Jackson), has filed this lawsuit challenging the medical care he received at Stanley Correctional Institution (Stanley) between April 2017 and February 2019. In September, 2020, all of the defendants moved for summary judgment on the ground that French failed to exhaust his administrative remedies on his claims in this lawsuit. On February 9, 2021, I granted summary judgment on all claims except for French's Eighth Amendment deliberate indifference claims against defendants Dr. Joan Hannula and Nichole Trevino for their July 13, 2018, treatment of French. I stayed a decision on that claim because French asserted that he *had* submitted an inmate complaint about that incident and then had followed up with a letter to the warden, assertions that Hannula and Trevino disputed. (Dkt. 63.) To resolve these factual disputes, on March 23, 2021, I held a Zoom evidentiary hearing, pursuant to *Pavey v. Conley*, 528 F.3d 494, 496-98 (7th Cir. 2008).

      Having received that testimony and reviewed the parties' post-hearing submissions, I find that defendants have proved nonexhaustion by a preponderance of the evidence. Accordingly, I am dismissing French's Eighth Amendment deliberate indifference claims against Dr. Hannula and Trevino without prejudice, I am relinquishing jurisdiction over his

state law claims against them related to the same July 13, 2018, interactions, and I am directing the clerk of court to close this case.

OVERVIEW

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must also "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [institution's] administrative rules require," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), including (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

When factual disputes related to exhaustion arise, the court must hold a hearing and act as a fact-finder to resolve those disputes. *Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015) ("Often exhaustion (or its lack) will be apparent, but when it is not, the district court must hold an evidentiary hearing to resolve the question.") (citing *Pavey*, 544 F.3d 739); *see also Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At Pavey hearings, judges may hear evidence, find facts, and determine credibility.") (citation omitted). Defendants bear the burden of proving non-exhaustion, *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015), and "[c]ourts analyze a prisoner's exhaustion under the preponderance of the evidence standard," *Williams v. Baldwin*, 239 F. Supp. 3d 1084, 1089 (N.D. Ill. 2017) (quotation omitted).

There is no dispute that French did not complete the steps required to comply with Wisconsin's Inmate Complaint Review system ("ICRS") with respect to his claim that Dr. Hannula and Trevino failed to respond appropriately to his reports of chest pain on July 13, 2018. In Wisconsin, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner ("ICE") within 14 days after the occurrence giving rise to the complaint, Wis. Admin. Code § DOC 310.07. There is no record of French filing an inmate complaint related to the events that took place on July 13, 2018.

French claims that he *did* submit an inmate complaint related these events, but that he never received a response, which stymied his efforts at the outset; because of this, says French, he has met the exhaustion requirement on this claim. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014) ("[A]ssuming a grievance was filed, [the prisoner] never received a response from the warden, and so didn't have to do anything further to keep his grievance alive."). Specifically, French attests that he submitted an inmate complaint on July 23, 2018 but never received a response. French further avers that he followed up with a letter to Warden Richardson on August 27, 2018, but never received a response. Defendants dispute French's averments; they maintain that French never actually attempted to file an inmate complaint or submitted a follow-up letter to the warden.

FACTS

On March 23, 2021 I held a Zoom evidentiary hearing to resolve this dispute. Defendants presented documentary evidence and testimony from two administrative employees at Stanley; then French testified briefly. Having heard and seen the witnesses

testify, having considered the exhibits, and having made credibility determinations, I have found the following:

## I.     July 23, 2018, Inmate Complaint

To prove that French did not submit an inmate complaint on July 23, 2018, defendants presented the testimony of Stanley's Inmate Complaint Examiner, Claire Hickey-Wilbur. She testified generally about Stanley's inmate complaint collection and tracking procedures, as well as her personal role in those procedures. Hickey-Wilbur testified that at Stanley, inmates in general population may submit an inmate complaint by placing it in a locked mailbox in their housing unit. She further explained that every weekday, the ICE collects inmate complaints from the lockbox from the housing units; brings the inmate complaints back to the ICE office; date stamps each inmate complaint; and determines whether to accept, return, or reject the inmate complaints. Within 10 days of collecting an inmate complaint, the ICE provides written notice to the inmate that the complaint has been received. Hickey-Wilbur further testified that every inmate complaint is entered into a digital system, called the Inmate Complaint Tracking System ("ICTS").

Defendants introduced Exhibit 501, the ICTS for French, which shows no record of French submitting an inmate complaint on or around July 23, 2018. Hickey-Wilbur testified that in July of 2018, she was working at Stanley as an ICE, and that she worked on July 23 and July 24 of 2018, a Monday and Tuesday. She further testified that on those days, she collected inmate complaints from French's housing unit, Unit 4B, a general population unit, specifying that she would have collected inmate complaints from the locked mailbox between 7:00a.m or 8:00a.m. each day. Defendants submitted Exhibit 502, which is a record of inmate

4

complaints collected from each institution unit from those days. Upon reviewing this record, Hickey-Wilbur testified that on July 23, 2018, the ICRS system showed that two inmate complaints had been collected from Unit 4B (from inmates other than French), and that on July 24, 2018, no inmate complaints were collected.

French cross-examined Hickey-Wilbur about these general procedures. Hickey-Wilbur credibly testified that she was unable to conceive of a situation in which an inmate submitted an inmate complaint in the locked mailbox that was lost in the system. Indeed, she was convinced that she would have been the only person able to physically access the inmate complaints submitted on July 23 and 24 of 2018, and she testified that she was unaware of any instance in which an inmate complaint was lost after being submitted into the ICRS through the mailbox system. Hickey-Wilbur was confident that she would have collected French's complaint if it had been placed in the locked mailbox on the evening of July 23, 2018.[1] French did not elicit any testimony on cross examination to discredit her.

I find Hickey-Wilbur's testimony thorough, precise, logical, and credible. As such, I find it more likely than not that French did not submit an inmate complaint as he has claimed.

---

[1] During the hearing, French represented that he submitted a video preservation request for footage that would have shown him filing the inmate complaint on July 23, 2018 and submitted the letter to the warden on August 27, 2018. I directed defendants to investigate whether those requests existed, and whether video footage from those days still exits. (Dkt. 68.) Defendants responded with evidence showing that French requested video footage of the July 13, 2018, incident, but that Stanley did not have a record of a preservation request for footage from July 23 or August 27 of 2018, and that no such footage exists. (*See* dkts. 74, 75, 76.) French does not dispute these representations, so I accept that this evidence does not exist.

## II.     August 27, 2018, Letter to Warden Richardson

French contends that when he received no response to his inmate complaint, he submitted a letter to Stanley's warden in which he expressed concern about this. To disprove French's contention, defendants presented the testimony of Lori Patrouille, the warden's secretary. Patrouille testified that she has been the warden's secretary since 2013, and that she regularly processes the warden's correspondence from inmates. She testified that her general practice every day is to collect from a mailbox all correspondence directed to the warden, to date stamp each piece of mail, and to keep all of this mail on her desk until it is documented and finalized, at which point she files it. Patrouille testified that every piece of correspondence is documented in a digital system called "Correspondence Sharepoint." She further testified that the warden responds to all inmate correspondence, either verbally or in writing, and that the warden's response is noted in Correspondence Sharepoint.

At the evidentiary hearing Patrouille reviewed the August 27, 2018, letter French claims he submitted to Warden Richardson (Def. Exh. 503). Patroille testified that she did not recognize the letter as having been received in the warden's office in August of 2018. Patrouille then reviewed a printout from Correspondence Sharepoint documenting inmate correspondence from August of 2018 (Def. Exh. 504). She testified that there was no record of this correspondence entered into the Correspondence Sharepoint system on or around August 27, 2018.

On cross-examination, French asked Patrouille if she was aware of any correspondence to the warden ever being lost; she responded that she was unaware of any lost inmate mail. Although not fleshed out in detail, French did establish that other inmates are responsible for collecting inmate mail and bringing it to the warden's office. The inference he wishes the court

to draw from this fact is that an inmate must have failed to deliver his August 27, 2018, letter. I decline to so infer. First, I already have concluded that French never submitted an inmate complaint to Hickey-Wilbur in the first place; second, there is no evidence to support French's hypothesis and no logical explanation comes to mind as to how or why this could have happened; and third, Patrouille testified that she is not aware of any occasion on which correspondence to the warden has not made it to his desk. In sum, I find by a preponderance of the evidence that French did not submit a letter about his complaint to the warden on or about August 27, 2018.

## CONCLUSION

Defendants have met their burden to show that French failed to exhaust his administrative remedies with respect to his Eighth Amendment deliberate indifference claims against Dr. Hannula and Trevino for the events that took place on July 13, 2018. I am dismissing those claims without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*[A]ll* dismissals under § 1997e(a) should be without prejudice."). Further, I will relinquish jurisdiction over French's related negligence claims against Dr. Hannula and Trevino, 28 U.S.C. § 1367(c)(3); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) and close this case.

ORDER

IT IS ORDERED that:

1. Plaintiff John French's Eighth Amendment deliberate indifference claims against Dr. Hannula and Trevino, for their treatment of French on July 13, 2018, are DISMISSED without prejudice for plaintiff's failure to exhaust his administrative remedies.

2. The court relinquishes jurisdiction over plaintiff's state law claims against Dr. Hannula and Trevino. Defendants Hannula and Trevino defendants are DISMISSED without prejudice.

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 29th day of April, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge